# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ELVIA DANNETTE MAREZ,<br><br>Plaintiff,<br><br>v.<br><br>MARTIN O'MALLEY, COMMISSIONER OF SOCIAL SECURITY,[1]<br><br>Defendant. | Case No.: 1:22-cv-01354-SKO<br><br>**ORDER ON PLAINTIFF'S SOCIAL SECURITY COMPLAINT**<br><br>(Doc. 1) |

## I.   INTRODUCTION

Plaintiff Elvia Marez ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security (the "Commissioner" or "Defendant") denying her application for disability insurance benefits ("DIB") under Title II of the Social Security Act (the "Act"). (Doc. 1).  The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to the Honorable Sheila K. Oberto, United States Magistrate Judge.[2]

## II.   BACKGROUND

Plaintiff was born on September 5, 1979. (Administrative Record ("AR") 35).  She filed a claim for DIB on July 24, 2017, alleging a disability onset date of February 1, 2005. (AR 15).  In her application, she alleged a herniated disc, depression, anxiety, osteoarthritis, sciatica, and a

---

[1] On December 20, 2023, Martin O'Malley was named Commissioner of the Social Security Administration. *See* https://www.ssa.gov/history/commissioners.html.  He is therefore substituted as the defendant in this action. *See* 42 U.S.C. § 405(g) (referring to the "Commissioner's Answer"); 20 C.F.R. § 422.210(d) ("the person holding the Office of the Commissioner shall, in [their] official capacity, be the proper defendant.").

[2] The parties have consented to the jurisdiction of the U.S. Magistrate Judge.  (*See* Doc. 10).

fractured left knee/meniscus. (AR 426). Plaintiff has completed two years of college and previously worked as a home health aide, though she had no full-time employment for roughly 15 years before her application. (AR 426-27).

Plaintiff's carpal tunnel syndrome is the impairment relevant to her appeal.[3] Plaintiff sought treatment in an emergency room in March 2017 after she was hit by the side view mirror of a car while riding a bike. (AR 611). Upon examination, healthcare providers found a laceration on her left hand, a decreased range of motion in her left shoulder, and some tingling in her pinky on her left hand. (AR 611-12). Plaintiff then reported numbness in her left hand and fifth finger two months later at a follow-up appointment. (AR 652). Her range of motion and coordination was intact, though she had decreased sensation in the fifth finger. (AR 652). On September 26, 2017, state agency consultant I. Ocrant, M.D., evaluated Plaintiff's claim at the initial level. (AR 174). Dr. Ocrant found Plaintiff's carpal tunnel syndrome to be a non-severe impairment and assigned Plaintiff no manipulative limitations. (AR 174). A second state agency consultant, A. Nasrabadi, M.D., found Plaintiff not disabled and assigned her no manipulative limitations on March 15, 2018. (AR 194).

On July 11, 2019, Plaintiff again reported numbness and tingling sensation, this time in her right wrist and both hands. (AR 907). While she displayed a normal range of motion in her wrist, normal sensation, normal tendon function and normal grip strength, Phalen's and Tinel's signs were positive for carpal tunnel syndrome. (AR 906-08). Anne A. White, FNP, prescribed her occupational therapy and suggested Plaintiff wear a soft wristlet splint during the day and a hard wristlet split at night. (AR 907). She received bilateral carpal tunnel injections on July 19, 2019. (AR 902.) Physical therapy notes indicate Plaintiff had a decreased range of motion and grip strength in her hands in August 2019. (AR 915-919).

An August 22, 2019, a nerve conduction and EMG study found evidence of severe compression neuropathy (carpal tunnel syndrome) of the median nerves across the wrist. (AR 910). Plaintiff underwent left carpal tunnel release, partial synovectomy, and a left/hand wrist regional nerve block in January 2020. (AR 923-25). On July 14, 2020, she reported her hand "[felt] so

---

[3] Because the parties are familiar with the medical evidence, it is summarized only to the extent necessary.

much better," though she still had pain in her palm. (AR 1081). The pain in her palm subsided to the point where she could wash dishes and do laundry. (AR 1118). Plaintiff underwent surgery on her right hand (a right carpal tunnel release with incision of transverse ligament, partial synovectomy, and right-hand wrist regional nerve block) on May 29, 2020. (AR 965). At a June 2020 follow-up, she noted her incision was sore and the pain in her hand was worsening. (AR 950). On July 27, 2020, Plaintiff had made progress in her range of motion, grip and pinch strength, though she still had pain in her palm and hypersensitivity on the scar. (AR 1108). At a September 15, 2020, occupational therapy appointment, she reported continuing pain in her palm shooting to her forearm. (AR 1081).

On August 7, 2021, Plaintiff underwent an orthopedic consultative evaluation with Dale Van Kirk, M.D. (AR 933). Dr. Van Kirk noted a full range of motion in her wrists without pain or difficulty. (AR 936). Dr. Van Kirk also noted various tests for carpal tunnel were negative and assigned Plaintiff no manipulative limitations. (AR 936-37).

Plaintiff testified at the January 2022 administrative hearing that her carpal tunnel syndrome limits her daily activities. (*See* AR 88-114). Plaintiff testified pain in her hands and back prevented her from working. (AR 93). She noted that before her surgeries, she had pain, stiffness, swelling and a loss of strength in both hands. (AR 95). After surgery, the pain improved, but gripping and her hand strength worsened. (AR 96). She testified that she could drive short distances, as she could not hold a steering wheel for more than 20 minutes. (AR 96-97). Physical therapy "help significantly with the pain" in her hands but not her finger strength. (AR 104).

The Commissioner denied Plaintiff's application for benefits initially on November 7, 2017, and again upon reconsideration on March 16, 2018. (AR 202). Plaintiff requested a telephonic hearing before an Administrative Law Judge (an "ALJ"), and the parties attended a hearing on October 24, 2019. (AR 202). In a decision dated January 15, 2020, the ALJ found that Plaintiff was not disabled as defined by the Act after conducting the five-step disability analysis set forth in 20 C.F.R. § 404.1520. (AR 214). Plaintiff appealed to the Appeals Council, and on October 5, 2020, the Council remanded the decision to an ALJ to further assess Plaintiff's bilateral carpal tunnel syndrome. (AR 222).

> In support of the residual functional capacity in this regard, the decision, page 10, states that the clamant displayed normal range of motion and full grip strength. The decision further states that no surgery was ever considered for her condition, suggesting that her doctors did not find her impairment significant enough to warrant surgical intervention. However, regarding the former point, physical therapy records document decreased range of motion and pinch strength in August 2019 (Exhibit C18F, pages 2 to 3). Regarding the latter point, the claimant was referred for hand surgery in June 2019 (Exhibit C13F, page 46). Additional evidence received at the Appeals Council indicates the claimant underwent left carpal tunnel release, partial synovectomy, and a left/hand wrist regional nerve block in January 2020.

(AR 222). Upon remand, the Appeals Council directed the ALJ to do the following:

> Obtain additional evidence concerning the claimant's impairments in order to complete the administrative record in accordance with the regulatory standards regarding consultative examinations and existing medical evidence.
>
> Further evaluate the claimant's alleged symptoms and provide rationale in accordance with the disability regulations pertaining to evaluation of symptoms (20 CFR 416.929).
>
> Give further consideration to the claimant's maximum residual functional capacity during the entire period at issue and provide rationale with specific references to evidence of record in support of assessed limitations (Social Security Ruling 96-8p). In so doing, evaluate the medical source opinion(s) pursuant to the provisions of 20 CFR 416.920c. As appropriate, the Administrative Law Judge may request the medical sources provide additional evidence and/or further clarification of the opinions (20 CFR 416.920b). The Administrative Law Judge may enlist the aid and cooperation of the claimant's representative in developing evidence from the claimant's medical sources.

(AR 222-23).

An ALJ held a second hearing on January 18, 2022. (AR 86-114). In a decision dated March 1, 2022, the ALJ found that Plaintiff was not disabled as defined by the Act after conducting the five-step disability analysis set forth in 20 C.F.R. § 404.1520. (AR 15-44). At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since July 24, 2017 (step one). (AR 18). At step two, the ALJ found that Plaintiff suffers from the following severe impairments: degenerative disc disease of the lumbar spine; diabetes mellitus; and obesity. (AR 18). Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Listings") (step three). (AR 18).

The ALJ then assessed Plaintiff's residual functional capacity (RFC)[4] and applied the assessment at steps four and five. *See* 20 C.F.R. § 404.1520(a)(4) ("Before we go from step three to step four, we assess your residual functional capacity . . . . We use this residual functional capacity assessment at both step four and step five when we evaluate your claim at these steps."). The ALJ found Plaintiff could do the following:

> lift and/or carry 20 pounds occasionally and 10 pounds frequently; sit about 6 hours in an 8-hour workday with normal breaks; and stand and/or walk 4 hours in an 8-hour workday with normal breaks (20 CFR 416.967). The claimant is frequently able to operate foot controls with the bilateral lower extremities. The claimant is occasionally able to push and pull with the upper and lower extremities, and is occasionally able to climb ramps and stairs. The claimant should never climb ladders, ropes, or scaffolds. The claimant is never able to crawl or crouch. The claimant is occasionally able to balance, kneel, and stoop. The claimant is frequently able to reach overhead with the right upper extremity. The claimant should not work in environments subjecting her to concentrated exposure to extreme cold or warm temperatures or humidity and/or wetness.

(AR 26).

At steps four and five, the ALJ found that the transferability of job skills was not at issue because Plaintiff had no relevant past work. (AR 35). The ALJ concluded that considering her age, education, work experience and RFC, there were jobs that existed in significant numbers in the national economy that Plaintiff could perform. (AR 35). The ALJ based this finding on the testimony of the Vocational Expert ("VE"), who testified Plaintiff could perform the following jobs: information clerk (Dictionary of Occupational Titles ("DOT") 237.367-046); accounting clerk (DOT 219.587-010)[5]; and hand packager (DOT 559.687-014). (AR 36). The ALJ concluded Plaintiff was not disabled under the Social Security Act. (AR 36).

Plaintiff sought review of this decision before the Appeals Council, which denied review on August 17, 2022. (AR 1). Therefore, the ALJ's decision became the final decision of the

---

[4] RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis of 8 hours a day, for 5 days a week, or an equivalent work schedule. TITLES II & XVI: ASSESSING RESIDUAL FUNCTIONAL CAPACITY IN INITIAL CLAIMS, Social Security Ruling ("SSR") 96-8P (S.S.A. July 2, 1996). The RFC assessment considers only functional limitations and restrictions that result from an individual's medically determinable impairment or combination of impairments. *Id*. "In determining a claimant's RFC, an ALJ must consider all relevant evidence in the record including, inter alia, medical records, lay evidence, and 'the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment.'" *Robbins v. Soc. Sec. Admin*., 466 F.3d 880, 883 (9th Cir. 2006).

[5] The ALJ referred to this job as a "laundry worker," but the title of the position in the DOT is "laundry laborer." DOT, *available at* 1991 WL 672992.

5

Commissioner. 20 C.F.R. § 404.981.

### III.    LEGAL STANDARDS

**A.    Applicable Law**

An individual is considered "disabled" for purposes of disability benefits if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). However, "[a]n individual shall be determined to be under a disability only if [their] physical or mental impairment or impairments are of such severity that he is not only unable to do [their] previous work but cannot, considering [their] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Id.* § 423(d)(2)(A).

"The Social Security Regulations set out a five-step sequential process for determining whether a claimant is disabled within the meaning of the Social Security Act." *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 20 C.F.R. § 404.1520). The Ninth Circuit has provided the following description of the sequential evaluation analysis:

> In step one, the ALJ determines whether a claimant is currently engaged in substantial gainful activity. If so, the claimant is not disabled. If not, the ALJ proceeds to step two and evaluates whether the claimant has a medically severe impairment or combination of impairments. If not, the claimant is not disabled. If so, the ALJ proceeds to step three and considers whether the impairment or combination of impairments meets or equals a listed impairment under 20 C.F.R. pt. 404, subpt. P, [a]pp. 1. If so, the claimant is automatically presumed disabled. If not, the ALJ proceeds to step four and assesses whether the claimant is capable of performing [their] past relevant work. If so, the claimant is not disabled. If not, the ALJ proceeds to step five and examines whether the claimant has the [RFC] . . . to perform any other substantial gainful activity in the national economy. If so, the claimant is not disabled. If not, the claimant is disabled.

*Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). "If a claimant is found to be 'disabled' or 'not disabled' at any step in the sequence, there is no need to consider subsequent steps." *Tackett*, 180 F.3d at 1098 (citing 20 C.F.R. § 404.1520).

"The claimant carries the initial burden of proving a disability in steps one through four of

6

the analysis." *Burch*, 400 F.3d at 679 (citing *Swenson v. Sullivan*, 876 F.2d 683, 687 (9th Cir. 1989)). "However, if a claimant establishes an inability to continue [their] past work, the burden shifts to the Commissioner in step five to show that the claimant can perform other substantial gainful work." *Id.* (citing *Swenson*, 876 F.2d at 687).

**B.     Scope of Review**

"This court may set aside the Commissioner's denial of [social security] benefits [only] when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole." *Tackett*, 180 F.3d at 1097 (citation omitted). "Substantial evidence . . . is 'more than a mere scintilla,'" and means only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *see also Ford v. Saul*, 950 F.3d 1141, 1154 (9th Cir. 2020).

"This is a highly deferential standard of review . . . ." *Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009). "The ALJ's findings will be upheld if supported by inferences reasonably drawn from the record." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (citation omitted). Additionally, "[t]he court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation." *Id.*; *see, e.g.*, *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001) ("If the evidence is susceptible to more than one rational interpretation, the court may not substitute its judgment for that of the Commissioner." (citations omitted)).

Nonetheless, "the Commissioner's decision 'cannot be affirmed simply by isolating a specific quantum of supporting evidence.'" *Tackett*, 180 F.3d at 1098 (quoting *Sousa v. Callahan*, 143 F.3d 1240, 1243 (9th Cir. 1998)). "Rather, a court must 'consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's] conclusion.'" *Id.* (quoting *Penny v. Sullivan*, 2 F.3d 953, 956 (9th Cir. 1993)).

Finally, courts "may not reverse an ALJ's decision on account of an error that is harmless." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012) (citing *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055–56 (9th Cir. 2006)). Harmless error "exists when it is clear from the record

that 'the ALJ's error was inconsequential to the ultimate nondisability determination.'" *Tommasetti*, 533 F.3d at 1038 (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 885 (9th Cir. 2006)). "[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009) (citations omitted).

## IV. DISCUSSION

Plaintiff contends the ALJ erred at step two of the analysis by failing to assess Plaintiff's carpal tunnel syndrome as a severe impairment and then failing to account for related manipulative limitations at steps four and five. (Doc. 15 at 24). For the reasons below, the Court finds the ALJ did not err, and thus, reversal is not warranted.

### A. Legal Standard

"At step two of the five-step sequential inquiry, the Commissioner determines whether the claimant has a medically severe impairment or combination of impairments." *Smolen v. Chater*, 80 F.3d 1273, 1289–90 (9th Cir. 1996) (citing *Bowen v. Yuckert*, 482 U.S. 137, 140–41 (1987)). "[A]t the step two inquiry, . . . the ALJ must consider the combined effect of all of the claimant's impairments on her ability to function, without regard to whether each alone was sufficiently severe." *Smolen*, 80 F.3d at 1290 (citing 42 U.S.C. § 423(d)(2)(B) and TITLES II & XVI: THE SEQUENTIAL EVALUATION PROCESS, Social Security Ruling ("SSR") 86-8 (S.S.A. 1986)).

"'[A]n impairment is not severe if it does not significantly limit [the claimant's] . . . ability to do basic work activities.'" *Smolen*, 80 F.3d at 1290 (citing 20 C.F.R. §§ 404.1520(c) & 404.1521(a)). "[B]asic work activities are the abilities and aptitudes necessary to do most jobs." TITLES II & XVI: MED. IMPAIRMENTS THAT ARE NOT SEVERE, SSR 85-28 (S.S.A. 1985). Examples of "basic work activities" include (1) "[p]hysical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling;" (2) "[c]apacities for seeing, hearing, and speaking;" (3) "[u]nderstanding, carrying out, and remembering simple instructions;" (4) "[u]se of judgment;" (5) "[r]esponding appropriately to supervision, co-workers and usual work situations;" and (6) "[d]ealing with changes in a routine work setting." 20 C.F.R. § 416.922(b).

"An impairment or combination of impairments can be found 'not severe' only if the evidence establishes a slight abnormality that has 'no more than a minimal effect on an [individual's] ability to work.'" *Smolen*, 80 F.3d at 1290 (quoting SSR 85–28). Additionally, "an ALJ may find that a claimant lacks a medically severe impairment or combination of impairments only when his conclusion is 'clearly established by medical evidence.'" *Webb v. Barnhart*, 433 F.3d 683, 687 (9th Cir. 2005) (citing SSR 85–28); *cf. Ukolov v. Barnhart*, 420 F.3d 1002, 1006 (9th Cir. 2005) (finding that the claimant "failed to meet his burden of establishing disability" where "none of the medical opinions included a finding of impairment, a diagnosis, or objective test results").

"Great care should be exercised in applying the not severe impairment concept." SSR 85–28. "The Commissioner has stated that '[i]f an adjudicator is unable to determine clearly the effect of an impairment or combination of impairments on the individual's ability to do basic work activities, the sequential evaluation should not end with the not severe evaluation step.'" *Webb*, 433 F.3d at 687 (alteration in original) (quoting SSR 85–28).

Ultimately, "[t]he severity regulation increases the efficiency and reliability of the evaluation process by identifying at an early stage those claimants whose medical impairments are so slight that it is unlikely they would be found to be disabled even if their age, education, and experience were taken into account." *Yuckert*, 482 U.S. at 153. In other words, "the step-two inquiry is a de minimis screening device to dispose of groundless claims." *Smolen*, 80 F.3d at 1290 (citing *Yuckert*, 482 U.S. at 153–54). "Nonetheless, '[t]he plaintiff has the burden of establishing the severity of the impairment.'" *Jennings v. Kijakazi*, No. 1:20–cv–01180–SKO, 2022 WL 209239, at *8 (E.D. Cal. Jan. 24, 2022); *see, e.g.*, *Burch*, 400 F.3d at 679 ("The claimant carries the initial burden of proving a disability in steps one through four of the analysis.") (citing *Swenson*, 876 F.2d at 687).

**B.     The ALJ Did Not Err at Step Two**

Plaintiff contends the ALJ incorrectly found Plaintiff's functional deficits from her carpal tunnel syndrome were not significant for at least 12 months (as required under 42 U.S.C. § 423(d)(1)(A)) to be considered a severe impairment. Plaintiff states the ALJ should not have

used Plaintiff's surgery dates (January and May 2020) as the starting point to calculate the 12-month durational requirement, but rather, the record supported a diagnosis of carpal tunnel syndrome as far back as June 2019. (Doc. 15 at 25).

In concluding Plaintiff's carpal tunnel syndrome did not amount to a severe impairment, the ALJ noted:

> [T]he evidence does not support greater limitations than those noted by the Disability Determination Service (Exhibits C5A, C7A) and Dr. Van Kirk (Exhibit C20F). In addition, the evidence shows the claimant reported significant relief from surgery on the left hand as well as improved function of the right hand. Overall, the evidence relative to carpal tunnel syndrome show much improvement with the left upper extremity function as soon as 7 months after diagnosis and improvement with the right upper extremity as soon as 11 months after diagnosis. She was able to perform activities of daily living and tasks involving gripping and grasping (i.e., dishes and laundry). The functional deficits due to carpal tunnel syndrome were not significant for at least the requisite 12 month duration to be considered a severe impairment.

(AR 20-21).

The ALJ's finding is supported by substantial evidence. Plaintiff's arguments center on when Plaintiff began suffering symptoms of carpal tunnel syndrome, but Plaintiff must establish her condition resulted in the "inability to engage in SGA [substantial gainful activity]" for "the required [twelve]-month period." SSR 82-52, Titles II and XVI: Duration of Impairment, 1982 WL 31376, at *1. An impairment is "severe" if it "significantly" limits a claimant's ability to do "basic" work activities and "is expected to last for a continuous period of at least 12 months." 20 C.F.R. §§ 404.1520(c), 404.1509. Basic work activities include physical functions like walking, standing, sitting, seeing, lifting, and pushing; social functions like communicating and responding to supervisors and coworkers; and cognitive functions like using judgment, understanding and carrying out instructions, and dealing with changes in a routine work setting. SSR 85-28, 1985 WL 56856, at *3. An impairment is not severe if it has "no more than a minimal effect on an individual's ability to work." *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996) (citing SSR 85-28, 1985 WL 56856, at *3) (internal quotation marks omitted).

Plaintiff contends her carpal tunnel syndrome was supported by EMG testing in June

2019,[6] but treatment notes show that while Plaintiff noted hand numbness and pain, there is no evidence it prevented her from engaging in basic work activities, and Plaintiff carries the burden to show her impairments limit her basic abilities. *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 689 (9th Cir. 2009). This conclusion is furthered by treatment notes from the following month, where Plaintiff reported numbness and tingling in her right wrist and both hands, but displayed a normal range of motion, normal sensation, normal tendon function and normal grip strength. (AR 906-08). Even assuming a decreased range of motion significantly limited Plaintiff's ability to do basic work activities, Plaintiff reported that she could resume such activities, like doing dishes and laundry, by July 2020. (AR 1118). That same month, doctors noted a progress in her range of motion, grip strength and pinch strength. (AR 1108). Accordingly, the ALJ did not err by finding Plaintiff's carpal tunnel syndrome had not met the durational requirement to constitute a severe impairment, as "[a] diagnosis alone does not establish the severity of an impairment." *Cindy F. v. Berryhill*, 367 F.Supp.3d 1195, 1207 (D. Oregon Feb. 13, 2019) (citing *Key v. Heckler*, 754 F.2d 1545, 1549-50 (9th Cir. 1985).

Plaintiff makes no other meaningful argument that the ALJ should have included limitations in Plaintiff's RFC to accommodate her carpal tunnel except because it satisfied the 12-month durational requirement under Step Two. For instance, Plaintiff does not contend that the ALJ improperly discredited Plaintiff's subjective testimony. Without additional argument to support why the ALJ should have included limitations to accommodate Plaintiff's carpal tunnel, any error would be harmless. "Step two is merely a threshold determination meant to screen out weak claims. It is not meant to identify the impairments that should be taken into account when determining the RFC." *Buck v. Berryhill*, 869 F.3d 1040, 1046 (9th Cir. 2017). Because Step Two was resolved in Plaintiff's favor, she could not have been prejudiced. *See id.* (holding any error in omitting an impairment from the severe impairments identified at Step Two was harmless when Step Two was resolved in claimant's favor).

---

[6] Plaintiff also contends her carpal tunnel syndrome dated back to March 2017, but treatment records indicate any care she received in the emergency department related to her bike accident, as opposed to the effects of carpal tunnel syndrome. (AR 611).

11

### V. CONCLUSION

After consideration of Plaintiff's and the Commissioner's briefs and a thorough review of the record, the Court finds that the ALJ's decision is supported by substantial evidence and is therefore AFFIRMED. The Clerk of this Court is DIRECTED to enter judgment in favor of Defendant Martin O'Malley, Commissioner of Social Security, and against Plaintiff.

IT IS SO ORDERED.

| Dated: | **February 6, 2024** | /s/ *Sheila K. Oberto* |
|---|---|---|
| | | UNITED STATES MAGISTRATE JUDGE |